CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 JUL 10 PM 1:05

DEPUTY CLERK_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| LILA KELLI EZELL and MARTIN SANCHEZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | NO. 2:15-CV-00083-J |
| BURNIE WELLS, individually and in his official capacity; JUDGE HAROLD KEETER, individually and in his official capacity; SWISHER COUNTY SHERIFF'S DEPARTMENT; and SWISHER COUNTY, TEXAS, | § § § § § § § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is a *Motion to Dismiss* filed by Defendant Swisher County, Texas ("the County") and a *Motion to Dismiss* filed by Defendant Harold Keeter ("Judge Keeter"). Plaintiffs Lila Kelli Ezell ("Ezell") and Martin Sanchez ("Sanchez") filed responses on May 27, 2015. Defendants did not file a reply. Defendants' Motions are GRANTED IN PART and DENIED IN PART.

### BACKGROUND

This case arises from incidents of alleged sexual harassment and retaliation in the Swisher County Sheriff's Department, which caused two Department employees—Lila Ezell and Martin Sanchez—to resign from their positions with the County. Ezell and Sanchez filed their *Original Complaint* in this Court on March 12, 2015. Shortly thereafter, Plaintiffs filed a *Notice of Voluntary Dismissal Without Prejudice*, informing the Court that Sanchez was voluntarily dismissing all of the claims alleged on his behalf in the *Original Complaint*. Defendants Keeter

1

and Swisher County responded with *Motions to Dismiss* filed on April 6, 2015. However, the

Plaintiffs later filed a *First Amended Complaint* on April 27, 2015, re-asserting Sanchez's

claims. In their *First Amended Complaint*, Plaintiffs make the following allegations:

Lila Ezell began working for the Swisher County Sheriff's Department as a Deputy on

October 1, 2013. She was recruited to join the Department by Swisher County Sheriff Burnie

Wells ("Sheriff Wells") in order to establish a K-9 program. Wells had recently been appointed

to the position of County Sheriff by Swisher County Judge Harold Keeter, after the County's

previous sheriff had "depart[ed]." At around the same time, both Sheriff Wells and Swisher

County were named as defendants in a federal civil rights and employment discrimination

lawsuit filed by Cassie Pointer, a Sheriff's Department employee. Shortly after Ezell was hired,

Plaintiffs allege that Wells ordered Ezell to befriend and "conduct surveillance" on Cassie

Pointer in order to gather evidence that Wells could then use as a pretext for terminating

Pointer—presumably in retaliation for Pointer's lawsuit. Plaintiffs allege that Wells also ordered

Ezell to perform surveillance on Sheriff's Department employees Mandy Dempsey and Plaintiff

Martin Sanchez, because Wells believed both were sympathetic to Pointer and would serve as

witnesses in Pointer's lawsuit against Wells and the County.

Ezell states that after she verbally refused to engage in this surveillance, Wells became

increasingly hostile towards her and threatened to fire or demote her if she reported Wells'

attempts to retaliate against Pointer, Dempsey, and Sanchez. Ezell alleges that Wells yelled at

her, directed vulgar language at her, invaded her personal space, and continually pressured her to

help him retaliate against Pointer, Dempsey, and Sanchez for their participation in Pointer's

lawsuit. Wells terminated Ezell's plans to develop a K-9 program—the primary reason Ezell had

come to work for Swisher County—and issued a "negative counseling memo" criticizing Ezell

2

for being confrontational, defensive, and insubordinate. Ezell also alleges that Wells created a hostile work environment for herself and other employees—including Sanchez—by yelling at employees, invading employees' personal space, spitting on employees, addressing employees in a threatening and hostile manner, and using profanity. Ezell alleges that Wells harassed her, as well as the Department's other female employees, by addressing them as "honey" and "darling" and by putting his arms around them and touching their shoulders.

Martin Sanchez began working for the Swisher County Sheriff's Department on April 23, 2010. Sanchez alleges that after he submitted a positive letter of reference for Cassie Pointer and indicated a willingness to testify on Pointer's behalf, Sheriff Wells retaliated against him and subjected him to a hostile work environment. Specifically, Sanchez alleges that Wells prohibited Sanchez from speaking with County employees outside of the Sheriff's Department, yelled and directed vulgar language at Sanchez, rummaged through Sanchez's desk when he was out of the office, and refused Sanchez's requests for scheduling accommodations and additional resources for the Department. Sanchez also alleges that Sheriff Wells threatened to fire or demote him if he reported Wells' harassment and retaliation.

Plaintiffs allege that Judge Keeter was aware that Sheriff Wells lacked the necessary law enforcement qualifications and training to serve as Swisher County's Sheriff, yet nevertheless appointed Wells because he was a personal friend. Keeter was aware that Wells was harassing the Plaintiffs, but took no remedial steps to protect them or other employees from Wells' hostile behavior. Plaintiffs allege that Keeter conspired with Wells to violate their constitutional rights by subjecting Plaintiffs to a hostile work environment and by using intimidation and threats to deter the Plaintiffs from reporting Defendants' alleged misconduct.

3

Sanchez alleges that after Keeter learned of his efforts to assist Cassie Pointer in her lawsuit against the County, Keeter retaliated against Sanchez by acting in a "demeaning, and spiteful manner," by refusing Sanchez's personnel and resource requests, and by subjecting Sanchez to "impossible working conditions and hours." Finally, Plaintiffs allege more generally that Keeter imposed a hostile work environment on them, both directly and indirectly, by facilitating Wells' sexual harassment of female employees.

Plaintiffs allege that Swisher County had several policies, practices, or customs that allowed its employees and agents to "act with deliberate indifference to the constitutional rights of individuals," including Swisher County's female employees. These policies include (1) a policy of tolerating employee misconduct; (2) a policy of encouraging misconduct by failing to adequately supervise, discipline, or train employees; and (3) a policy of retaliating against employees who report harassment. Plaintiffs also allege that the County failed to enact or enforce policies that would prevent unlawful discrimination and retaliation. Plaintiffs further allege that Keeter and Wells were final policymakers for Swisher County, and were acting under color of state law when they engaged in the alleged harassment and retaliation.

Both Ezell and Sanchez eventually submitted letters of resignation to Sheriff Wells. Plaintiffs allege that Wells responded by terminating them on the spot and filing Form F-5 "Separation of Licensee" reports with the Texas Commission on Law Enforcement, insinuating that Ezell and Sanchez were terminated because of their misconduct, performance problems, insubordination, and untruthfulness. Plaintiffs allege that their resignation was tantamount to a constructive termination because they were motivated to resign by the Defendants' constant harassment and creation of a hostile work environment.

4

Ezell and Sanchez each submitted a "Charge of Employment Discrimination" to the United States Equal Employment Opportunity Commission and the Texas Human Rights Commission. Ezell received a "Notice of Right to Sue" letter on December 15, 2014. Sanchez received a "Notice of Right to Sue" letter on December 18, 2014. Plaintiffs filed their *Original Complaint* in this Court on March 12, 2015, and their *Amended Complaint* on April 27, 2015. In their *Amended Complaint*, Plaintiffs assert the following causes of action: (1) 42 U.S.C. § 1983 claims against Wells and Keeter in their individual and official capacities for alleged First and Fourteenth Amendment violations; (2) 42 U.S.C. § 1983 claims against Swisher County for alleged First and Fourteenth Amendment violations; (3) conspiracy claims against Wells and Keeter; (4) 42 U.S.C. § 2000e-3(a) (Title VII) claims against Swisher County for unlawful retaliation; and (5) Tex. Gov't Code § 554.002 (Texas Whistleblower Act) claims against Swisher County.

## STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the pleading standard of Rule 8 does not require detailed factual allegations, it does require more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Formulaic recitations of the elements of a cause of action will not suffice. *See id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When making this inquiry, a court must construe the

5

complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Although a court cannot dismiss a claim because it seems likely that the plaintiff will be unsuccessful, the pleadings must still be "factually suggestive" beyond mere conclusory allegations. *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 660 (E.D. Tex. 2008). Factual allegations must be enough "to raise a right to relief above the speculative level" when assuming all factual allegations as pleaded are true. *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Defendants Keeter and Swisher County seek dismissal of Plaintiffs' claims on several grounds. First, Judge Keeter argues that he is immune from suit because he is entitled to the defenses of absolute judicial immunity and qualified immunity. Second, the County argues that all claims against the Swisher County Sheriff's Department should be dismissed because the Department is not a legal entity capable of being sued. Third, Swisher County argues that Plaintiffs' section 1983 claims against Judge Keeter and Sheriff Wells in their official capacities should be dismissed, because they are duplicative of Plaintiffs' section 1983 claims against Swisher County. Fourth, Judge Keeter argues that Plaintiffs have failed to state a claim for a Fourteenth Amendment Due Process violation. Fifth, Swisher County argues that Plaintiffs have failed to state a claim for municipal liability under section 1983. Sixth, Judge Keeter argues that the intracorporate conspiracy doctrine bars Plaintiffs' conspiracy claims. Seventh, Swisher County argues that the Court must dismiss Plaintiffs' Texas Whistleblower Act claims because the Plaintiffs did not report the alleged violations to the appropriate law enforcement authority. Finally, Judge Keeter argues that Plaintiffs are not entitled to exemplary or punitive damages.

6

Defendants' *Motions to Dismiss* do not address Plaintiffs' retaliation claims under 42 U.S.C. § 2000e-3(a) (Title VII).

### A.  JUDICIAL IMMUNITY

Judge Keeter first argues that all of Plaintiffs' claims against him should be dismissed under Fed. R. Civ. P. 12(b)(6) because, as the Swisher County Judge, he is entitled to the defense of absolute judicial immunity.  It is well-settled that judges generally have absolute immunity from suits for money damages for their judicial actions.  *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991).  However, it is equally well-settled that a judge is not entitled to absolute judicial immunity where the actions complained of are nonjudicial in nature.  *See id.* at 11; *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

In determining whether a judge's actions are judicial or nonjudicial, the Supreme Court has counseled district courts to take a functional approach, by focusing on the nature of the act and the expectations of the parties.  *See Forrester v. White*, 484 U.S. 219, 227 (1988); *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  Applying this functional approach, the Fifth Circuit uses a four factor test to determine whether a judge's actions are judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or an appropriate adjunct space, such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.  *See Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005); *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985).

None of these factors apply to Judge Keeter's alleged actions.  Plaintiffs complain that Keeter conspired with Sheriff Wells to both subject them to a hostile working environment and to retaliate against them for supporting Cassie Pointer in her lawsuit against the County.

7

Sanchez also complains that Keeter retaliated against him personally by acting in a demeaning and spiteful manner, by subjecting him to impossible working conditions, and by refusing Sanchez's personnel and resource requests.

First, the alleged retaliatory actions are not traditional judicial functions; rather, they relate to Keeter's administrative authority to manage the day-to-day affairs of Swisher County. *See Bigford v. Taylor*, 834 F.2d 1213, 1222 (5th Cir. 1988) ("the Texas constitution and statutes give the county judge numerous executive, administrative, and legislative chores . . . with virtually absolute sway over the particular tasks or areas of responsibility entrusted to him"). Second, there are no allegations that these acts occurred in Judge Keeter's courtroom or chambers. Third, the alleged actions were not connected to any case pending before Judge Keeter. Finally, the alleged actions did not arise out of a visit with Judge Keeter in his official capacity as a judge. Because the actions alleged in Plaintiffs' *Amended Complaint* are nonjudicial in nature, Judge Keeter is not entitled to the defense of absolute judicial immunity. *See Forrester v. White*, 484 U.S. 219, 230 (1988) (holding that a judge was not immune from liability for allegedly having engaged in illegal discrimination when firing a court employee).

## B.  QUALIFIED IMMUNITY

Judge Keeter next argues that even if absolute judicial immunity is unavailable, Plaintiffs' claims should still be dismissed because he is entitled to the defense of qualified immunity. Qualified immunity is a doctrine designed to protect government officials sued in their individual capacity from liability for civil damages, so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officials sued in their individual capacity for violations of section

8

1983 may assert the defense of qualified immunity.[1] *Jones v. Throckmorton Cnty., Tex.*, 1:02-CV-182-C, 2004 WL 419811, at *3 (N.D. Tex. March 8, 2004) (citing *Petta v. Rivera*, 143 F.3d 895, 898 (5th Cir. 1998)). If the official successfully establishes the qualified immunity defense, he or she is completely immune from suit. *See Pearson,* 555 U.S. at 231.

Once a government official pleads the defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the official's alleged conduct violates clearly established law. *See Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 456 (5th Cir. 2001) (citing *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)). Because Judge Keeter pled the defense of qualified immunity in his *Motion to Dismiss*, the burden shifts to the Plaintiffs to establish that Keeter is not entitled to qualified immunity. *See Jones*, 2004 WL 419811, at *3. To sustain this burden and overcome a motion to dismiss on the issue of qualified immunity, Plaintiffs must satisfy two independent inquiries. First, the Court asks whether the allegations in Plaintiffs' complaint, if true, state a constitutional or statutory violation. *See Lauderdale v. Tex. Dep't of Crim. Justice, Inst. Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (citing *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005)); *see also Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). If the Court determines "that the alleged conduct did not violate a constitutional right, [the] inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009). Second, if the allegations in Plaintiffs' complaint do state a

---

[1] The only claims made against Judge Keeter in his individual capacity—and thus the only claims for which Judge Keeter can raise the defense of qualified immunity—are Plaintiffs' 42 U.S.C. § 1983 claims. Although Plaintiffs' *First Amended Complaint* appears to allege a Title VII anti-retaliation claim against both Judge Keeter and Sheriff Wells, "there is no individual capacity liability for a retaliation claim under Title VII." *Johnson v. Interstate Mgmt. Co.*, LLC, 871 F. Supp. 2d 1, 5 (D.D.C. 2012); *see also Provensal v. Gaspard*, 524 F. App'x 974, 977 (5th Cir. 2013) (holding that individuals who are not employers cannot be sued in their individual capacity under Title VII). Thus, the Court will assume that Plaintiffs' Title VII anti-retaliation claims are made against Swisher County only. Similarly, there is no individual capacity liability for a claim under the Texas Whistleblower Act. *See Rodriguez v. Laredo Indep. Sch. Dist.*, 82 F. Supp. 2d 679, 688 (S.D. Tex 2000) (finding that the Whistleblower Act creates a cause of action against state or local governmental agencies and *not* against individual governmental employees).

violation, the Court must then decide whether the conduct was objectively reasonable in light of the law that was clearly established at the time of the incident. *See Lauderdale*, 512 F.3d at 166.

Since the Supreme Court's decision in *Pearson v. Callahan*, federal district courts are permitted to exercise their sound discretion in determining the order in which to analyze the two-part qualified immunity test. 555 U.S. 223, 236 (2009). Here, the Court will first address the question of whether the conduct alleged in Plaintiffs' complaint states a constitutional violation. If the Court answers that question in the affirmative, it will then turn to the question of whether Judge Keeter's actions were nevertheless objectively reasonable in light of the law that was clearly established at the time of the alleged conduct.

### 1. The Alleged Constitutional and Statutory Violations

Plaintiffs' section 1983 claim against Judge Keeter in his individual capacity is based on three alleged constitutional violations: (1) violation of the Equal Protection Clause of the Fourteenth Amendment; (2) violation of the Due Process Clause of the Fourteenth Amendment; and (3) violation of the First Amendment. At the first stage of the qualified immunity analysis, the Court asks whether the allegations in Plaintiffs' complaint, if true, state a constitutional violation. *See Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).

**Violation of the Equal Protection Clause of the Fourteenth Amendment.** The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. To establish a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury. *See Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292-93 (1987)). Typically, a plaintiff must also show that the actions of the government official were motivated by improper

10

considerations, such as sex, race, or religion. *See Bryan v. City of Madison Miss.*, 213 F.3d 267, 277 (5th Cir. 2000).

Here, Plaintiff Ezell alleges that Judge Keeter "discriminated against [her] because of her gender" in violation of the Equal Protection Clause, by "facilitating the sexual harassment by WELLS, and by failing to prevent or ameliorate the hostile conditions." Sex discrimination in public employment is a clear violation of the Equal Protection Clause. *See Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). To state a claim for sex discrimination under section 1983, a plaintiff must allege facts that, if true, would established that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the defendant made an adverse employment decision despite the plaintiff's qualifications; and (4) the plaintiff was either (a) replaced by a person not a member of the protected class or (b) similarly-situated non-protected employees were treated more favorably than the plaintiff.[2] *See id.* at 554; *Sherrod v. Prairie View A & M Univ.*, No. CIV.A. H-10-1858, 2011 WL 843936, at *7 (S.D. Tex. Mar. 8, 2011) (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).

There is no dispute that, as a woman, Lila Ezell is a member of a protected class, and thus satisfies the first element of a sex discrimination claim under the Equal Protection Clause. *See Ruggles v. Greco*, No. CIV.A. 14-1021, 2015 WL 1538803, at *9 (E.D. La. Apr. 7, 2015). Ezell also alleges that she was recruited by Sheriff Wells to fill the position of "Deputy" and to establish a K-9 program for the patrol division of the Swisher County Sheriff's Department. Although Ezell does not explicitly state that she was qualified for the position of Deputy, these

---

[2] The test for sex discrimination under section 1983 and the Equal Protection Clause is the same as the test for sex discrimination under Title VII. *See Lauderdale v. Tex. Dep't Of Crim. Justice*, 512 F.3d 157, 166 (5th Cir. 2007) (noting that the inquiry into intentional discrimination is essentially the same for individual actions brought under section 1983 and Title VII); *see also Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002). Thus, in analyzing Plaintiffs' equal protection claims, the Court will consult both section 1983 and Title VII cases.

allegations are sufficient to satisfy the second element of a sex discrimination claim under the

Equal Protection Clause. *See, e.g., Owens v. La. State Dep't of Health & Hosps.*, No. CIV.A07-

743-JJB-DLD, 2007 WL 4442269, at *4 (M.D. La. Dec. 14, 2007) (finding plaintiff alleged that

she was qualified for the position at issue despite not actually using the word "qualified" in her

complaint, because plaintiff included other allegations suggesting she was qualified).

　　　Third, Ezell alleges that she was subjected to an adverse employment action despite her

qualifications—specifically, she alleges that she was constructively discharged as a result of the

hostile work environment created, in part, by Judge Keeter's actions. *See Brown v. Dr.*

*Pepper/Seven Up, Inc.*, No. CIV.A.399CV0156P, 2000 WL 370669, at *11 (N.D. Tex. Apr. 11,

2000) (citing *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997)) (noting that constructive

discharge is an adverse employment action for purposes of a sex discrimination claim). To prove

constructive discharge, a plaintiff must show that a reasonable person in his or her shoes would

have felt compelled to resign. *See Benningfield v. City of Hous.*, 157 F.3d 369, 378 (5th Cir.

1998). A plaintiff may feel compelled to resign where they are subjected to badgering,

harassment, and humiliation that is calculated to encourage the plaintiff to resign. *See LeBeouf v.*

*Manning*, 575 F. App'x 374, 376 (5th Cir. 2014); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d

292, 297 (5th Cir. 1994). Ezell alleges that Judge Keeter discriminated against her because of

her gender by facilitating Sheriff Wells' sexual harassment, subjecting her to a hostile work

environment, and threatening her with the loss of her job if she ever disclosed Wells' actions.

Ezell subsequently resigned because of Judge Keeter's conduct. These allegations, if true, are

sufficient to establish a constructive discharge. Ezell has properly pled the existence of an

adverse employment action under the third element of a sex discrimination claim.

Finally, Ezell's allegations are sufficient to satisfy the final element—that similarly-situated non-protected employees were treated more favorably than her. Specifically, Ezell alleges that Sheriff Wells sexually harassed her and other female employees by addressing them in sexually demeaning terms and by touching them in an offensive and inappropriate manner. Ezell alleges that Judge Keeter was aware of this harassment and facilitated it by failing to take any remedial action to protect Ezell. These allegations suggest that male employees of Swisher County were treated more favorably than Ezell, because they were not subjected to sexual harassment.

Because Ezell's sex discrimination claim is asserted against Judge Keeter in his individual capacity under section 1983 and the Equal Protection Clause, rather than against Swisher County under Title VII, Ezell must also allege that Keeter was either personally involved in the constitutional deprivation, or that his wrongful actions were causally connected to the deprivation. *See Stark v. Univ. of S. Miss.*, 8 F. Supp. 3d 825, 837 (S.D. Miss. 2014). As described above, Ezell alleges that Judge Keeter discriminated against her, because of her gender, by facilitating Sheriff Wells' sexual harassment, and by failing to ameliorate the hostile work environment that Ezell was subjected to—eventually leading to Ezell's resignation. These allegations are sufficient to establish a causal connection between Judge Keeter's actions and the alleged equal protection violation.

The allegations in Plaintiffs' complaint, if true, would establish that (1) Ezell is a member of a protected class; (2) Ezell was qualified for the position at issue; (3) Ezell was subjected to an adverse employment decision despite her qualifications; (4) similarly situated male employees were treated more favorably than Ezell, and (5) Judge Keeter's wrongful actions were causally connected to the alleged equal protection violation. Accordingly, under the first prong of the

qualified immunity analysis, Plaintiffs' complaint states a violation of Ezell's constitutional rights.

Like Ezell, Plaintiff Martin Sanchez alleges that Judge Keeter "discriminated against" him in violation of the Equal Protection Clause, by "facilitating the harassment by WELLS, and by failing to prevent or ameliorate the hostile conditions." However, Sanchez does not allege that he was discriminated against on the basis of his membership in a class traditionally protected by the Equal Protection Clause. There are no allegations that he was discriminated against because of his sex, his race, his religion, or his membership in some other protected class. The Supreme Court has recognized so-called "class of one" actions, where membership in a particular class is not alleged, but where "a plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Unfortunately for Sanchez, "class of one" equal protection claims are not cognizable in the public employment context. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 609 (2008). Because Sanchez has failed to allege a violation of the Equal Protection Clause, the Court dismisses Sanchez's section 1983 claims against Judge Keeter in his individual capacity, to the extent those claims are based on alleged violations of the Equal Protection Clause.

**Violation of the Due Process Clause of the Fourteenth Amendment.** Plaintiffs also allege that Judge Keeter violated their rights under the Due Process Clause of the Fourteenth Amendment by taking actions "that jeopardized [the Plaintiffs'] property interest[s] in [their] public employee jobs." The Fourteenth Amendment protects citizens from government acts that "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Property, in the context of the due process clause, "is an individual entitlement

14

grounded in state law, which cannot be removed except for cause." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) (internal quotation marks omitted).  In certain situations, public employees may have a property interest in their job that is protected by the Due Process Clause. *See Muncy v. City of Dall., Tex.*, 335 F.3d 394, 398 (5th Cir. 2003).  Specifically, "if under state law a state employee is granted a claim of entitlement to continued employment absent sufficient cause for discharge, that state employee has been granted a property interest that demands the procedural protections of due process." *Woodard*, 419 F.3d at 354.  If state law creates such a property right, the public employee is entitled to procedural due process before the government can terminate his employment.  *See McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155 (5th Cir. 1996) (citing *Schaper v. City of Huntsville*, 813 F.2d 709, 714 (5th Cir. 1987)).

At the motion to dismiss stage, a plaintiff must plead sufficient facts that, if true, would show that he has a property interest in continued employment that entitles him to due process protections.  *See LeBeouf v. Manning*, 575 F. App'x 374, 376 (5th Cir. 2014).  The existence of a property interest in continued public employment may be found in one of several sources: state law; employer policy, or contract.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577-78 (1972); *Muncy v. City of Dall., Tex.*, 335 F.3d 394, 398 (5th Cir. 2003).  However, under Texas law, there is a presumption that employment is at-will.  This presumption is rebutted only when the employment relationship has been expressly altered by contract or policy.  *See Muncy*, 335 F.3d at 398.  Thus, to survive Judge Keeter's *Motion to Dismiss*, Plaintiffs must allege the existence of a contract or employee handbook that negates the at-will employment presumption. *See Benjamin v. City of Watauga, Tex.*, 841 F. Supp. 2d 1010, 1014 (N.D. Tex. 2012).

In their amended complaint, Plaintiffs generally allege that they were "entitled to due process protection of freedom from arbitrary action that jeopardized [their] property interest in

[their] public employee jobs." Plaintiffs also allege that the actions of Keeter deprived them of their due process liberty and property interests. However, beyond these conclusory allegations, Plaintiffs make no effort to identify for the Court the precise source of this alleged property interest. Plaintiffs fail to allege the existence of an employment contract or employee manual that might create a constitutionally-protected property interest in continued public employment. *See McCall v. Dall. Ind. Sch. Dist.*, No. 3:99-CV-2118-M, 2001 WL 1335853, at *4-5 (N.D. Tex. Oct. 25, 2001) (dismissing plaintiff's due process claims where plaintiff failed to allege the existence of a contract or employment manual that gave her a protected property interest in continued employment). Plaintiffs also fail to cite to any Texas statute, ordinance, or case that might create such a property interest. *See Richards v. City of Weatherford*, 145 F. Supp. 2d 786, 790-91 (N.D. Tex. 2001) (dismissing plaintiff's due process claims in part because he "fail[ed] to cite any Texas statute, ordinance, contract, or caselaw recognizing a protected property interest"). Because there are no facts alleged in the *Amended Complaint* showing the existence of a protected property interest, there is no constitutional violation for which Judge Keeter would need qualified immunity. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009). Accordingly, the Court dismisses Plaintiffs' section 1983 claims to the extent they are based on Judge Keeter's alleged violations of the Due Process Clause of the Fourteenth Amendment.

**Violation of the First Amendment.** Plaintiffs also allege that Judge Keeter violated their rights under the First Amendment by "subjecting [them] to retaliation and punishment for supporting [their] co-worker Cassie Pointer, and for cooperating in an official investigation." The First Amendment protects a public employee's right to speak as a citizen on matters of public concern without fear of retaliation. *See Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 691-92 (5th Cir. 2007) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). To state a valid

16

First Amendment retaliation claim, a plaintiff's allegations must—if true—establish five elements: (1) the plaintiff was not speaking pursuant to his official job duties; (2) the plaintiff was speaking as a citizen on a matter of public concern; (3) the plaintiff's interest in speaking outweighed his employer's interest in promoting workplace efficiency; (4) the plaintiff suffered an adverse employment action; and (5) the adverse employment action was substantially motivated by the protected speech. *See Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 576 (N.D. Tex. 2012) (citing *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184-86 (5th Cir. 2005)).

If Plaintiffs' speech was made pursuant to their official duties as employees of the Swisher County Sheriff's Department, that "speech is not constitutionally protected, no matter how great its social significance." *Kostic v. Tex. A & M Univ. at Commerce*, 11 F. Supp. 3d 699, 717 (N.D. Tex. 2014). Speech is made pursuant to official duties if it is undertaken in the course of performing one's job. *See Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). Factors relevant to this inquiry include the employee's job description, whether the employee spoke on the subject matter of his employment, whether the speech stemmed from special knowledge gained as an employee, and whether the communication was internal or external in nature. *See Charles v. Grief*, 522 F.3d 508, 513-14 (5th Cir. 2008); *Davis*, 518 F.3d at 313.

Here, Plaintiffs allege that they were retaliated against in part because they "cooperated in [Cassie Pointer's] civil discrimination lawsuit" and "made statements in support of Cassie Pointer's claim of sexual harassment." Specifically, Martin Sanchez alleges that he provided a written statement that supported the discrimination claims made by Cassie Pointer in her lawsuit against Sheriff Wells and the County. Such external communication to a court is not speech made pursuant to official duties and is instead treated as a communication made by a citizen. *See Davis*, 518 F.3d at 313 (when an employee "take[s] his job concerns to persons outside the work

place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen"). The allegations in Plaintiffs' complaint suggest that Ezell and Sanchez were not speaking pursuant to their official duties when they made statements supporting Cassie Pointer's discrimination claim against the County.

The allegations in Plaintiffs' complaint must also establish that the Plaintiffs were speaking as citizens on a matter of public concern. *See Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 692 (5th Cir. 2011). The Fifth Circuit has held that matters of public concern include those matters "which can be fairly considered as relating to any matter of political, social, or other concern to the community." *Branton v. City of Dall.*, 272 F.3d 730, 739 (5th Cir. 2001). In evaluating whether the Plaintiffs were speaking as citizens on a matter of public concern, a court should consider the content, form, and context of a given statement. *See Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002). As detailed above, the allegations in Plaintiffs' complaint suggest that Ezell and Sanchez were acting as ordinary citizens when they made statements in support of Cassie Pointer's claims of sexual harassment and discrimination. Allegations that Texas county officials engaged in sexual harassment and other forms of employment discrimination are matters of public concern because those allegations are of political and social interest to the Swisher County community as a whole. Thus, the allegations in Plaintiffs' complaint, if true, would establish that Ezell and Sanchez were speaking as citizens on matters of public concern.

However, "[e]ven if a public employee speaks on a matter of public concern, his speech is not protected unless the employee's interest in expressing himself on the matter outweighs the government's interest in promoting the efficiency of its public services." *Kostic v. Tex. A & M*

18

*Univ. at Commerce*, 11 F. Supp. 3d 699, 719 (N.D. Tex. 2014) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). In making this determination, the Court utilizes a balancing test to weigh the public concern against the government's interest in efficient operations. *See Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995). The Court can think of almost no situation in which Swisher County's interest in promoting the efficiency of its public services could ever outweigh the Plaintiffs' interest in revealing to the courts and to the public the possibility that Swisher County had engaged in sexual harassment and employment discrimination. Based on the allegations in the *Amended Complaint*, Plaintiffs' interest in providing statements to a court in support of Cassie Pointer's discrimination claim clearly outweighs any contrary interest of Swisher County.

Finally, a plaintiff must allege that he suffered an adverse employment action that was substantially motivated by his protected speech. Here, Plaintiffs allege that they resigned from their positions with the Swisher County Sheriff's Department because of an increasingly hostile work environment and because they believed they would soon be terminated. Plaintiffs allege that their resignations amounted to constructive terminations. Plaintiffs also allege that they were constructively discharged because of their efforts to support Cassie Pointer's lawsuit.

Constructive discharge is considered an adverse employment action for purposes of proving a First Amendment retaliation claim. *See David v. Pointe Coupee Parish Sch. Bd.*, No. 00-30342, 2001 WL 43530, at *2 (5th Cir. Jan. 4, 2001). To prove constructive discharge, a plaintiff must show that a reasonable person in his or her shoes would have felt compelled to resign. *See Benningfield v. City of Hous.*, 157 F.3d 369, 378 (5th Cir. 1998). A plaintiff may feel compelled to resign where they are subjected to badgering, harassment, and humiliation that

19

is calculated to encourage the plaintiff to resign. *See LeBeouf v. Manning*, 575 F. App'x 374, 376 (5th Cir. 2014); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

The facts in Plaintiffs' complaint are sufficient to allege a constructive discharge. Ezell alleges that Judge Keeter facilitated Sheriff Wells' sexual harassment, subjected her to a hostile work environment, and threatened her with the loss of her job if she ever disclosed Wells' actions. Sanchez specifically alleges that after he provided a written statement supporting Cassie Pointer's discrimination claims, Judge Keeter retaliated against him, subjected him to impossible working conditions, and acted in a hostile, demeaning, and spiteful manner. Given these allegations of harassment, retaliation, and humiliation, a reasonable person in the shoes of Ezell and Sanchez would have felt compelled to resign. Plaintiffs have properly alleged that they suffered an adverse employment action substantially motivated by their protected speech.

The allegations in Plaintiffs' complaint, if true, would establish that (1) the Plaintiffs' speech was not made pursuant to their official job duties; (2) the Plaintiffs were speaking as citizens on matters of public concern when they made statements in support of Cassie Pointer's lawsuit against the County; (3) the Plaintiffs' interest in speaking publically about Swisher County's alleged discrimination and sexual harassment outweighs the County's interest in promoting workplace efficiency; and (4) the Plaintiffs suffered an adverse employment action that was (5) substantially motivated by the Plaintiffs' protected speech. Accordingly, under the first prong of the qualified immunity analysis, Plaintiffs' complaint states a violation of the First Amendment.

### 2. *Objectively Unreasonable Conduct*

Because Plaintiffs' complaint properly alleges two constitutional violations by Judge Keeter in his individual capacity—sex discrimination in violation of the Equal Protection Clause

of the Fourteenth Amendment and unlawful retaliation in violation of the First Amendment—the Court now turns to the second prong of the qualified immunity analysis. At this stage, the Court inquires whether Judge Keeter's actions were nevertheless objectively reasonably in light of the clearly established law at the time of the alleged constitutional violations. *See Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). If the law lacked such clarity that it would be objectively reasonable for Judge Keeter to erroneously believe that his conduct was not a violation of the constitution, he is entitled to the defense of qualified immunity. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

This second step in the qualified immunity analysis is best understood as two distinct inquiries: (1) what was the clearly established law at the time of the alleged constitutional violation; and (2) were Judge Keeter's actions objectively unreasonable in light of that clearly established law? *See Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998). To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

It has long been clearly established that there is a constitutional right to freedom from gender discrimination in the workplace. *See Stark v. Univ. of S. Miss.*, 8 F. Supp. 3d 825, 838 (S.D. Miss. 2014) (citing *Saucedo-Falls v. Kunkle*, 299 F. App'x 315, 323 (5th Cir. 2008)). At the motion to dismiss stage, before any substantial discovery has commenced, as long as the plaintiff's allegations "are sufficient to state a claim for intentional discrimination, an immunity defense will generally be foreclosed . . . as intentional racial [or gender] discrimination is never objectively reasonable." *Stark*, 8 F. Supp. 3d at 838 (quoting *King v. Lawrence Cnty. Bd. of Educ.*, No. 2:12-CV-68-KS-MTP, 2013 WL 319286, at *4 (S.D. Miss. Jan. 28, 2013)). Here,

21

Plaintiffs' complaint states a valid claim for intentional sex discrimination under the Equal

Protection Clause.  Because such gender discrimination is "never objectively reasonable," Judge

Keeter is not entitled to the defense of qualified immunity for Lila Ezell's gender discrimination

claims under section 1983 and the Equal Protection Clause.  *See id.*

Second, the law is also clearly established that "speech directed to a person outside of the

workplace on a matter of public concern only tangentially related to official duties is speech

protected by the First Amendment."  *Kostic v. Tex. A & M Univ. at Commerce*, 11 F. Supp. 3d

699, 722 (N.D. Tex. 2014) (quoting *Petrie v. Salame*, 546 F. App'x 466, 470 (5th Cir. 2013)).

Here, Plaintiffs allege that they assisted Cassie Pointer in her lawsuit against the County by

providing written statements in support of Pointer's discrimination claims.  Plaintiffs allege that

after Judge Keeter learned of their efforts to assist Cassie Pointer, he subjected them to a hostile

work environment, imposed impossible working conditions, acted in a demeaning and spiteful

manner, and threatened to terminate their employment.  Viewing these facts in the light most

favorable to the Plaintiffs, and considering the clearly established law on First Amendment

retaliation claims, a reasonable official in Judge Keeter's position would easily have determined

that the statements Plaintiffs in support of Cassie Pointer's discrimination claims were protected

speech, because the statements were made by the Plaintiffs as citizens on matters of public

concern.  Because Judge Keeter's retaliatory actions were objectively unreasonable, he is not

entitled to the defense of qualified immunity for Plaintiffs' First Amendment retaliation claims.

### C.  *CLAIMS AGAINST THE SWISHER COUNTY SHERIFF'S DEPARTMENT*

In addition to Sheriff Wells, Judge Keeter, and Swisher County, Plaintiffs also assert

claims against the Swisher County Sheriff's Department.  However, as Defendants correctly

note, state and local law enforcement agencies are not considered separate governmental entities

capable of being sued "unless the true political entity has taken explicit steps to grant the servient agency with jural authority." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991); *see also Alcala v. Dall. Cnty. Sheriff's Dep't*, No. 92-1853, 1993 WL 82042, at *1 (5th Cir. Mar. 12, 1993) (affirming trial court's conclusion that county sheriff's office could not be sued under Title VII because, under Texas law, it was not a separate legal entity capable of being sued).

Here, Plaintiffs do not allege—and there is no evidence to suggest—that Swisher County has granted its Sheriff's Department jural authority that would allow it to be sued as an independent legal entity. Accordingly, because the Swisher County Sheriff's Department is not an independent legal entity capable of being sued, the Court dismisses all claims against the Department under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *See, e.g.*, *Barnes v. Barnes*, CIV.A. 103CV231-C, 2004 WL 691202, at *6-7 (N.D. Tex. Mar. 30, 2004) (holding that the Abilene Police Department was not a proper party to the suit because "Plaintiffs have presented no evidence that the APD enjoys a separate legal existence from the City of Abilene"). The Court will assume that all factual allegations referencing the Swisher County Sheriff's Department are factual allegations made against Swisher County. *See Gordon v. Neugebauer*, No. 1:14-CV-0093-J, 2014 WL 5531734, at *5 (N.D. Tex. Oct. 31, 2014).

## D.  SECTION 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (internal quotation marks omitted).  To state a claim under section 1983, a plaintiff must allege facts that show that he has been deprived

of a right secured by the Constitution and the laws of the United States and that the deprivation

occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978);

*Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Swisher County seeks

dismissal of Plaintiffs' section 1983 claims, arguing that (1) the official capacity section 1983

claims against Sheriff Wells and Judge Keeter are duplicative of the section 1983 claims against

Swisher County; and (2) Plaintiffs have failed to state a claim for municipal liability under

section 1983.

### 1. *Official Capacity Claims*

A plaintiff can sue an individual state or municipal government official under section

1983 through one of two theories of liability: (1) an individual-capacity theory, or (2) an official-

capacity theory. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (discussing the

importance of distinguishing between official-capacity and individual-capacity suits under

section 1983). In an individual-capacity suit, a plaintiff seeks to impose *personal* liability on a

government official for actions he or she takes under color of state law. *See id.* at 165. By

contrast, an official capacity suit against an individual government official "generally

represent[s] only another way of pleading an action against an entity of which an officer is an

agent." *Id.* Here, Plaintiffs have asserted section 1983 claims against Sheriff Wells and Judge

Keeter in both their individual and official capacities.

Defendant Swisher County argues that the Court should dismiss all claims against Judge

Keeter and Sheriff Wells in their official capacities "because they are duplicative of claims

against Swisher County." The Supreme Court has stated that "an official-capacity suit is, in all

respects other than name, to be treated as a suit against the entity." *Id.* at 166. This is because

"[w]hen a plaintiff sues a county or municipal official in her official capacity, the county or

municipality is liable for the resulting judgment and, accordingly, may control the litigation on behalf of the officer in her official capacity." *Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996). Because Plaintiffs have also named Swisher County as a party to this lawsuit, "no purpose is served by allowing Plaintiffs' duplicative section 1983 official capacity claims against [Judge Keeter and Sheriff Wells] to proceed." *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *6 (W.D. Tex. Nov. 15, 2006). Accordingly, the Court grants Swisher County's *Motion to Dismiss* Plaintiffs' official capacity section 1983 claims against Judge Harold Keeter and Sheriff Burnie Wells. The Court will treat those official capacity claims as claims against Swisher County.

### 2.  Municipal Liability

In addition to their individual capacity section 1983 claims against Sheriff Wells and Judge Keeter, Plaintiffs also sue Swisher County for alleged section 1983 violations. Swisher County seeks dismissal of these claims on the grounds that "Plaintiffs have failed to plead a policy that violated federal law or a policy that was adopted by the County with a deliberate indifference to known or obvious consequences."

In 1978, the Supreme Court first held that municipalities and other local governmental bodies—like Swisher County—are "persons" under 42 U.S.C. § 1983 and can thus be sued by individuals for their constitutional violations. *See Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 689-90 (1978). However, a municipality cannot be held liable under section 1983 simply because it employs a tortfeasor. *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). Instead, a plaintiff must prove that the county itself is liable because it adopted a policy or custom that caused an employee to commit a constitutional violation. *See id.*; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988).

To establish municipal liability under section 1983, a plaintiff must prove (1) the existence of a policymaker; (2) the existence of an official municipal policy; and (3) a violation of the plaintiff's constitutional rights whose moving force was the municipal policy or custom. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). "The three attribution principles identified here—a policymaker, an official policy and the 'moving force' of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Id.*

Here, there is no dispute regarding the existence of a policymaker. Plaintiffs allege that "HAROLD KEETER, County Judge, and BURNIE WELLS, County Sheriff, were each ultimate final policy makers with respect to their positions as officials of SWISHER COUNTY." The Fifth Circuit has long recognized that county sheriffs and county judges in Texas are final policymakers for the county. *See Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (holding that a sheriff is a Texas county's final policymaker in the area of law enforcement); *Bigford v. Taylor*, 834 F.2d 1213, 1222 (5th Cir. 1988) (holding that Texas county judges are final policymakers under section 1983).

The Court has already determined that the *First Amended Complaint* alleges a violation of Plaintiffs' constitutional rights. *See* section B.1., *supra*. Specifically, Plaintiffs' complaint alleges violations of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Thus, at the motion to dismiss stage, the only remaining issue is whether Plaintiffs' complaint alleges the existence of an official municipal policy that was the moving force behind the alleged constitutional violations.

Plaintiffs' complaint does allege the existence of multiple official municipal policies. Plaintiffs assert that Swisher County's "policies and/or customs include tolerating misconduct by

26

its employees, . . .; encouraging misconduct by failing to adequately supervise, discipline, or

train; as well as punishing and retaliating against those who revealed harassment." Plaintiffs also

allege that these policies caused the constitutional violations complained of: "SWISHER

COUNTY had a policy, policies and/or customs in place that enabled its agents and employees to

act with deliberate indifference to the constitutional rights of individuals." Plaintiffs further

allege that Swisher County failed to enact and enforce policies that would "prevent unlawful

discrimination and retaliation, identify and punish perpetrators of unlawful discrimination and

retaliation, and protect victims of unlawful discrimination and retaliation from retaliation and

hostile treatment in the workplace." And again, Plaintiffs allege that these policies caused the

constitutional violations complained of: "this failure to enact and/or enforce appropriate policies

resulted in . . . sexual harassment and retaliation . . . for which SWISHER COUNTY is liable

under 42 U.S.C. § 1983." At the motion to dismiss stage, these allegations are more than

sufficient to allege the existence of a municipal policy that was the moving force behind the

alleged constitutional violations. *See Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919

F. Supp. 2d 787, 810 (E.D. Tex. 2013); *Mamoth v. City of Farmers Branch*, No. CIV.A.3:01-

CV-0921-P, 2002 WL 255480, at *5 (N.D. Tex. Feb. 20, 2002).

In additional to the municipal policies identified above, Plaintiffs allege that the isolated

unconstitutional conduct of Judge Keeter and Sheriff Wells should be considered official

Swisher County policy because Wells and Keeter were final policymakers and were acting in

their official capacity when they allegedly violated Plaintiffs' constitutional rights. Generally, a

municipal policy cannot be inferred from a single constitutional violation. *See Piotrowski v. City

of Hous.*, 237 F.3d 567, 581 (5th Cir. 2001). However, "a single decision may create municipal

liability *if* that decision were made by a final policymaker responsible for that activity." *Bennett*

27

*v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (quoting *Brown v. Bryan Cnty., Okla.*, 67 F.3d 1174, 1183 (5th Cir. 1995)) (emphasis in original).  In other words, if a municipal official engages in isolated unconstitutional conduct, and if that official has "final policymaking authority to establish municipal policy with respect to the conduct that resulted in a violation of constitutional rights," then that isolated unconstitutional conduct will be considered an official municipal policy for purposes of section 1983 municipal liability.  *Brown*, 67 F.3d at 1182 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

Here, Plaintiffs allege that Judge Keeter violated their rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment by discriminating against them, harassing them, and retaliating against them for supporting Cassie Pointer's lawsuit.  They further allege that as County Sheriff and County Judge, Wells and Keeter "were final policymakers, and Swisher County is therefore directly liable for their conduct."  As a county judge, Harold Keeter is an elected official with final policymaking authority over a wide range of non-judicial administrative responsibilities, including budget-related decisions.  *See Borum v. Swisher Cnty.*, No. 2:14-CV-127-J, 2014 WL 4814541, at *4 (N.D. Tex. Sept. 29, 2014) (citing *Bigford v. Taylor*, 834 F.2d 1213, 1222 (5th Cir. 1988)).  Thus, the alleged constitutional violations committed by Judge Keeter, if true, would give rise to direct liability against Swisher County because Judge Keeter's actions constitute official municipal policy.  *See Woodard v. Andrus*, 419 F.3d 348, 352-53 (5th Cir. 2005) (holding that unconstitutional fees assessed by district clerk were official municipal policy because clerk had final authority over the collection of civil litigation fees); *Howard v. Town of Jonesville*, 935 F. Supp. 855, 860 (W.D. La. 1996) (finding that the Town was directly liable for the Mayor's individual acts of discrimination and sexual harassment because the Mayor was the Town's "ultimate policymaker").

Plaintiffs' complaint alleges the existence of a policymaker, an official municipal policy, and multiple constitutional violations whose moving force was the municipal policy.  Because these allegations are sufficient to state a claim for municipal liability under section 1983, the Court denies Swisher County's *Motion to Dismiss* Plaintiffs' section 1983 claims.

### 3.   *Conspiracy Claims*

Judge Keeter also argues that Plaintiffs' conspiracy claims should be dismissed because the intracorporate conspiracy doctrine bars conspiracy claims between individual agents of a corporation or public entity.[3]  To prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.  *See Thompson v. Johnson*, 348 F. App'x 919, 922 (5th Cir. 2009).  Here, Plaintiffs allege that Judge Keeter and Sheriff Wells conspired "to deprive [Plaintiffs] of equal protection of the laws and of equal privileges and immunities under the laws."  However, it is well-settled law in the Fifth Circuit that agents acting on behalf of a single legal entity cannot conspire with themselves or with the entity.  *See Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994).  Thus, if all of the defendants alleged to be a part of the conspiracy are members of the same collective legal entity, there can be no conspiracy because "the conspiracy does not involve two or more people."  *See Reynosa v. Wood*, No. 97-40492, 1997 WL 811828, at *2 (5th Cir. Dec. 18, 1997) (citing *Hilliard*, 30 F.3d at 653).

---

[3] Plaintiffs' complaint does not specify whether they are pursuing a conspiracy claim under 42 U.S.C. § 1983 or under 42 U.S.C. § 1985. However, because the intracorporate conspiracy doctrine applies to both types of conspiracies, resolving this ambiguity is not necessary. *See, e.g., Garza v. U.S. Marshals Serv.*, No. CIV.A. B-07-052, 2008 WL 501292, at *4 (S.D. Tex. Feb. 21, 2008) (finding that the intracorporate conspiracy doctrine barred plaintiff's section 1983 conspiracy claim); *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *14 (W.D. Tex. Nov. 15, 2006) (finding that the intracorporate conspiracy doctrine barred plaintiff's section 1985 conspiracy claim).

Plaintiffs argue that Judge Keeter and Sheriff Wells can conspire with each other to violate section 1983 because they are not members of the same legal entity—Keeter is the Swisher County Judge and Wells is the head of the Swisher County Sheriff's Department. Judge Keeter counters that he and Wells *are* members of the same legal entity because they are both officials employed by Swisher County.

Plaintiffs point to *Hill v. City of Houston* in support of their arguments. 991 F. Supp. 847 (S.D. Tex. 1998). In that case, the court found that Houston's Fire Department, Fleet Management office, and Legal Department were all separate legal entities that could conspire with each other because the City of Houston was "a huge organization with numerous branches and departments independent from one another." *Id.* at 851. However, *Hill* appears to be an outlier. Most cases involving allegations of a conspiracy among various municipal employees have found that those employees were members of a single legal entity—the municipality—and thus were incapable of conspiring with each other. *See, e.g., Marceaux v. Lafayette City-Parish Consol. Gov't*, 921 F. Supp. 2d 605, 643-44 (W.D. La. 2013) (finding that the intracorporate conspiracy doctrine foreclosed plaintiffs' conspiracy claims because the defendants named in the suit, including the city's police chief and the city's chief administrative officer, were employees of the city); *Britt v. Jackson Cnty., Miss.*, No. 1:11-CV-00074-HSO-JMR, 2012 WL 2460534, at *8 (S.D. Miss. June 27, 2012) ("Jackson County and its officials, agents, and employees constitute a single legal entity, which cannot conspire with itself"). Thus, because Sheriff Wells and Judge Keeter are members of a single legal entity—Swisher County—they are incapable of conspiring with each other. Plaintiffs' conspiracy claims are barred by the intracorporate conspiracy doctrine and must be dismissed for failure to state a claim upon which relief can be granted.

### E.  TEXAS WHISTLEBLOWER ACT

The Texas Whistleblower Act provides that "[a] state or local governmental entity may

not suspend or terminate the employment of, or take other adverse personnel action against, a

public employee who in good faith reports a violation of law by the employing governmental

entity or another public employee to an appropriate law enforcement authority." Tex. Gov't

Code Ann. § 554.002(a).  The Fifth Circuit has interpreted this statute to require the plaintiff to

prove that: (1) he is a public employee; (2) he acted in good faith in making a report; (3) the

report involved a violation of law by an agency or employee; (4) the report was made to an

appropriate law enforcement authority; and (5) he suffered retaliation as a result of making the

report.  *See Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir. 2003).  At the motion to

dismiss stage, the plaintiff must include the elements of a Whistleblower Act claim "within the

pleadings so that the court can determine whether they sufficiently allege a violation under the

Act."  *Sherman v. Dall. ISD*, No. 3:10-CV-1146-B-BH, 2011 WL 477500, at *4 (N.D. Tex. Jan.

24, 2011).

In its *Motion to Dismiss*, Swisher County argues that the Court should dismiss Plaintiffs'

Texas Whistleblower Act claims because neither Ezell nor Sanchez reported the violations of

law to an appropriate law enforcement authority prior to the alleged retaliation.  The

Whistleblower statute defines "appropriate law enforcement authority" as an authority that "is a

part of a state or local governmental entity . . . that the employee in good faith believes is

authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2)

investigate or prosecute a violation of criminal law."  Tex. Gov't Code Ann. § 554.002(b).

Plaintiffs argue that they reported the alleged violations to the Swisher County Sheriff's

Department, and that the Sheriff's Department is an appropriate law enforcement authority

31

within the meaning of the Texas Whistleblower Act because "the County Judge and the County Sheriff represented the final authorities responsible for adjudicating grievances that the Plaintiffs might have within the county."

When evaluating whether an entity is an appropriate law enforcement authority under the Texas Whistleblower Act, the critical inquiry is whether the entity had authority to regulate under or enforce the particular law that the employee reported had been violated. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002). The mere fact that the Swisher County Sheriff's Department has general authority to enforce, investigate, and prosecute does not make it an appropriate law enforcement agency under the Texas Whistleblower Act. *See id.* at 319; *Rogers v. City of Fort Worth*, 89 S.W.3d 265, 284 (Tex. App. 2002). Plaintiffs allege that they reported "unlawful employment discrimination" and "unlawful deprivation of civil rights of prisoners" to Sheriff Wells, "who was the ultimate and final law enforcement authority."

However, the Swisher County Sheriff's Department does not have authority to regulate under or enforce federal employment discrimination laws such as Title VII. Similarly, the Sheriff's Department does not have the authority to regulate under or enforce federal civil rights deprivations under section 1983. While it is true that Swisher County must *comply* with federal employment discrimination laws and the Fourteenth Amendment, it does not follow that the County has the authority to regulate under or enforce those provisions. *See Tex. Water Dev. Bd. v. Neal*, No. 03-09-00459-CV, 2010 WL 1730029, at *3 (Tex. App. Apr. 28, 2010) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). The Swisher County Sheriff's Department only has authority to enforce and investigate a violation of Texas criminal law that occurs within the confines of Swisher County—it has no similar authority over civil law

violations. *See Alford v. Hunt Cnty.*, No. 3:11-CV-457-L, 2011 WL 5104504, at *11 (N.D. Tex. Oct. 21, 2011).

But Swisher County and its Sheriff's Department do qualify as "appropriate law enforcement authorities" under the Texas Whistleblower Act if Ezell and Sanchez erroneously believed in good faith that they were the appropriate entities to report employment discrimination and federal civil rights violations to. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320-21 (Tex. 2002). To establish this good faith belief, a plaintiff must prove (1) that he believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and (2) that his belief was reasonable in light of his training and experience. *See id.* at 321 (citing Tex. Gov't Code Ann. § 554.002(b)). At the motion to dismiss stage, allegations that the employee reasonably believed he was reporting violations to the appropriate law enforcement authorities are sufficient to survive a Rule 12(b)(6) motion to dismiss. *See, e.g., Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F. Supp. 2d 729, 739 (W.D. Tex. 2011) (denying defendant's motion to dismiss Whistleblower Act claims where plaintiff alleged she reasonably believed "that the Superintendent and the Board had the authority to regulate under or enforce the law"); *Rodriguez v. Laredo Indep. Sch. Dist.*, 82 F. Supp. 2d 679, 684 (S.D. Tex. 2000) (denying defendant's motion to dismiss Whistleblower Act claims where plaintiff alleged conversations "supporting her belief that she was reporting these [alleged violations] to the right authorities").

Here, although Plaintiffs' *Amended Complaint* does not identify specific conversations, it does allege generally that both Ezell and Sanchez reported legal violations, in good faith, to a person they believed "was the ultimate and final law enforcement authority"—Sheriff Burnie Wells. Although "later information [may] indicate[] that these beliefs were not held in good

33

faith," the Court believes it would be premature to dismiss this claim. *Rodriguez*, 82 F. Supp. 2d at 684. Because Plaintiffs allege that they reported legal violations to officials whom they believed were appropriate law enforcement authorities, the Court denies Swisher County's *Motion to Dismiss* Plaintiffs' Texas Whistleblower Act claims.

### F.  EXEMPLARY/PUNITIVE DAMAGES

Judge Keeter argues that "Plaintiffs fail to state a claim for exemplary or punitive damages" because the complaint does not identify actions taken by Judge Keeter that were motivated by evil intent or reckless or callous indifference to the Plaintiffs' rights. A plaintiff is permitted to recover punitive damages "against a state official acting in an individual capacity pursuant to a § 1983 claim." *Ibrahim v. City of Hous., Tex.*, No. CIV.A. H-07-4329, 2008 WL 2962887, at *7 (S.D. Tex. July 29, 2008); *see also Smith v. Wade*, 461 U.S. 30, 56 (1983). A court can award punitive damages where the defendant's conduct "is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 1867292, at *12 (N.D. Tex. Aug. 5, 2005) (quoting *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003)).

Here, Plaintiffs allege that Judge Keeter harassed them and retaliated against them for assisting Cassie Pointer in her lawsuit against the County. Plaintiffs further allege that Judge Keeter's actions were outrageous, indecent, intolerable, and malicious, and displayed conscious indifference to Plaintiffs' rights. Viewing these facts in the light most favorable to the Plaintiffs, and assuming their truth, Plaintiffs have plausibly alleged actions that were malicious or that were taken in callous disregard of the Plaintiffs' constitutional rights. *See Gill v. Devlin*, 867 F. Supp. 2d 849, 857 (N.D. Tex. 2012). Accordingly, Judge Keeter's *Motion to Dismiss* Plaintiffs' punitive/exemplary damages claim is denied.

## CONCLUSION

The *Motions to Dismiss* filed by Swisher County and Judge Harold Keeter are

GRANTED IN PART and DENIED IN PART, specifically:

Swisher County's *Motion to Dismiss* is GRANTED as to the following claims:

    (1) Plaintiffs' claims against the Swisher County Sheriff's Department

    (2) Plaintiffs' claims against Burnie Wells and Harold Keeter in their official capacities

    (3) Plaintiffs' section 1983 claim against Swisher County, to the extent it is based on an

        alleged violation of the Due Process Clause of the Fourteenth Amendment

    These claims are DISMISSED WITHOUT PREJUDICE.

Swisher County's *Motion to Dismiss* is DENIED as to the following claims:

    (1) Plaintiffs' section 1983 claim against Swisher County, to the extent it is based on

        alleged violations of the First Amendment and the Equal Protection Clause of the

        Fourteenth Amendment

    (2) Plaintiffs' Texas Whistleblower Act claims

Harold Keeter's *Motion to Dismiss* is GRANTED as to the following claims:

    (1) Plaintiffs' section 1983 claim against Harold Keeter, to the extent it is based on an

        alleged violation of the Due Process Clause of the Fourteenth Amendment

    (2) Plaintiffs' section 1983 conspiracy claim

    These claims are DISMISSED WITHOUT PREJUDICE.

Harold Keeter's *Motion to Dismiss* is DENIED as to the following claims:

    (1) Plaintiffs' section 1983 claim against Harold Keeter, to the extent it is based on

        alleged violations of the First Amendment and the Equal Protection Clause of the

        Fourteenth Amendment

(2) Plaintiffs' exemplary/punitive damages claims under section 1983

IT IS SO ORDERED.

Signed this the ___10th___ day of July, 2015.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE